O

1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                    CENTRAL DISTRICT OF CALIFORNIA
10
11
12  JENNIFER EMILY HUNYH RUDD,     )   Case No. CV 14-1678-KK
                                   )
13              Plaintiff,         )
                                   )   MEMORANDUM AND ORDER
14        v.                       )
                                   )
15  CAROLYN W. COLVIN, Acting      )
    Commissioner of Social Security,)
16                                 )
                Defendant.         )
17  _____)

18        Plaintiff Jennifer Emily Hunyh Rudd ("Plaintiff"), seeks review of the final

19  decision of the Commissioner of the Social Security Administration ("Commissioner" or

20  "Agency") denying her applications for Disability Insurance Benefits and Supplemental

21  Security Income.  The parties consented to the jurisdiction of the undersigned United

22  States Magistrate Judge, pursuant to 28 U.S.C. § 636(c).  For the reasons stated below,

23  the Commissioner's decision is REVERSED and this action is REMANDED for further

24  review consistent with this decision.

25
26
27
28
                                       1

# I.

## PROCEDURAL HISTORY

On February 17, 2011, Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB").[1]  Administrative Record ("AR") at 137-40.  Plaintiff alleged a disability onset date of September 23, 2006.  Id. at 68.

On July 13, 2011, the Agency denied the application.  Id. at 68-75.  The application was subsequently denied upon reconsideration on February 15, 2012.  Id. at 77-85.

On March 23, 2012, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  Id. at 101-02.  On March 21, 2012, a hearing was held before ALJ James L. Moser.  Id. at 39-53.  On April 25, 2012, the ALJ issued a decision denying Plaintiff's application.  Id. at 33.

On December 14, 2012, Plaintiff asked the Agency's Appeals Council to review the ALJ's decision.  Id. at 5-7.  On January 8, 2014, the Appeals Council denied Plaintiff's request for review.  Id. at 1-4.

On March 3, 2014, Plaintiff filed the instant action.  ECF 1.  This matter is before the Court on the parties' Joint Stipulation ("JS"), filed on October 6, 2014, which the Court has taken under submission.

# II.

## STANDARD FOR EVALUATING CONTINUING DISABILITY

To qualify for DIB, a claimant must demonstrate a medically determinable physical or mental impairment that (1) prevents him from engaging in substantial gainful activity; and (2) is expected to result in death or to last for a continuous period of at least twelve months.  Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998).  The impairment must render the claimant incapable of performing the work he previously performed and

---

[1]Plaintiff has a date last insured for purposes of Title II of December 31, 2011.  AR at 13.

2

incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

To decide if a claimant is disabled, and therefore entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. §§ 404.1520, 416.920.  The steps are:

(1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

(2)   Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.[2]

(3)   Does the claimant's impairment meet or equal one of the specific impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.[3]

(4)   Is the claimant capable of performing work he has done in the past?  If so, the claimant is found not disabled.  If not, proceed to step five.

(5)   Is the claimant able to do any other work?  If not, the claimant is found

---

[2] In evaluating whether a mental impairment is severe, the ALJ must rate the degree of functional loss resulting from the impairment, in four areas:  (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation.  20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3); see also Maier v. Comm'r of Soc. Sec. Admin., 154 F.3d 913, 914-15 (9th Cir. 1998).  The Agency's regulations state:  "If we rate the degree of your limitation in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities."  20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

[3] "Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's [residual functional capacity]."  Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222-23 (9th Cir. 2009) (citing 20 C.F.R. § 416.920(e)).  In determining a claimant's residual functional capacity, an ALJ must consider all relevant evidence in the record.  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).  This involves, inter alia, evaluating the credibility of a claimant's testimony regarding his capabilities.  Chaudhry v. Astrue, 688 F.3d 661, 670 (9th Cir. 2012).

1   disabled.  If so, the claimant is found not disabled.

2   Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54

3   (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

4   The claimant has the burden of proof at steps one through four, and the

5   Commissioner has the burden of proof at step five.  Bustamante, 262 F.3d at 953-54.

6   Additionally, the ALJ has an affirmative duty to assist the claimant in developing the

7   record at every step of the inquiry.  Id. at 954.  If, at step four, the claimant meets his

8   burden of establishing an inability to perform past work, the Commissioner must show

9   that the claimant can perform some other work that exists in "significant numbers" in the

10  national economy, taking into account the claimant's residual functional capacity

11  ("RFC"), age, education, and work experience.  Tackett, 180 F.3d at 1098, 1100;

12  Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

13

14  ## III.

15  ## THE ALJ'S DECISION

16  At step one, the ALJ found that, since September 23, 2006, Plaintiff had not

17  engaged in substantial gainful activity during the period from her alleged onset date of

18  September 23, 2006 through her date last insured of December 31, 2011.  AR at 13.

19  At step two, the ALJ found Plaintiff has the following medically determinable

20  impairments:  levoscoliosis of the lumbrosacral spine; left genu recurvatum; bilateral

21  Achilles tendonitis; bilateral post-tibial tendon dysfunction with pes planus; left calcaneal

22  valgus; lattic degeration bilaterally; and post-traumatic stress disorder ("PTSD").  Id.

23  The ALJ found that beginning October 2010, Petitioner's impairments, in combination,

24  were severe.  Id. at 14.  The ALJ further found that beginning October 2010, Plaintiff's

25  PTSD, considered alone, has been severe.  Id.

26  At step three, the ALJ found Plaintiff does not have an impairment that meets or

27  equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Id. at

28  14.

4

1   At step four, the ALJ found Plaintiff is unable to perform any past relevant work.

2   Id. at 20.

3   At step five, the ALJ found Plaintiff can perform various jobs that exist in

4   significant numbers in the national economy.  Id. at 20.  Thus, the ALJ found Plaintiff is

5   not disabled.  Id. at 21.

6   **IV.**

7   **PLAINTIFF'S CLAIMS**

8   Plaintiff makes the following claims:

9   1.   The ALJ's decision to discredit Plaintiff's VA rating was not supported by

10       persuasive, specific, and valid reasons supported by the record. JS at 3.

11   2.   The ALJ erred in his credibility assessment of Plaintiff.  JS at 8.

12   3.   The ALJ failed to properly weigh evidence from Plaintiff's treating

13       providers and incorrectly found Plaintiff did not meet or equal a listing level

14       impairment.  JS at 15.

15   4.   The ALJ's residual functional capacity assessment is not supported by

16       substantial evidence.  JS at 19.

17   The Court finds the first claim dispositive of this matter, and thus does not address

18   the other claims.  See Augustine ex rel. Ramirez v. Astrue, 536 F. Supp. 2d 1147, 1153

19   n.7 (C.D. Cal. 2008) ("[T]his Court need not address the other claims plaintiff raises,

20   none of which would provide plaintiff with any further relief than granted, and all of

21   which can be addressed on remand.").

22

23   **V.**

24   **DISCUSSION**

25   Plaintiff alleges the ALJ's decision to discredit Plaintiff's VA rating was not

26   supported by persuasive, specific, and valid reasons supported by the record.

27   Because of the "marked similarity" between the VA and SSA disability programs,

28   the ALJ should ordinarily give "great weight" to a VA determination of disability.

McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002).  "Both programs serve the same governmental purpose—providing benefits to those unable to work because of a serious disability."  Id.  "Both programs have a detailed regulatory scheme that promotes consistency in adjudication of claims."  Id.  "Both are administered by the federal government, and they share a common incentive to weed out meritless claims."  Id. While a VA disability decision "does not necessarily compel the SSA to reach an identical result, . . . the ALJ must consider the VA's findings in reaching his decision."  Id.  However, because the two programs are not identical, "the ALJ may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record."  Id

Here, the VA granted Plaintiff a disability rating of 60% in May of 2011.  AR 238. Plaintiff was assigned 30% rating for PTSD, 10% for two knee conditions combined, and 10% for each ankle.  Id.  The overall rating of 60% was an increase from a "less than 50%" rating Plaintiff had been receiving in the prior years of 2009 and 2010.  AR 247-48. Effective July 18, 2011, the VA determined Plaintiff's service connected condition – PTSD – had "worsened" and granted an increase in her assigned percentage from 30% to 70% for the PTSD alone.  AR 781.  Plaintiff received compensation at the 100% rate, as the VA determined she was "unable to work" due to her "service connected disability/disabilities."  Id.

Despite the high disability rating found by the VA, the ALJ rejected this finding. AR at 19.  In doing so, the ALJ acknowledged he "must state good reasons for not agreeing with the VA rating in this case."  Id.  The ALJ then stated "the VA's determination was not based on a comprehensive evaluation of the evidence available." Id.  The ALJ specifically cites the "opinions of the consultative examiners and the State Agency medical consultants" as constituting evidence that was "not available to the VA evaluators."  Id.  The Agency defends the ALJ's rejection of the VA determination based upon this logic and cites the same evidence that the ALJ did, namely, "the opinions of the state agency medical consultants and consultative examiners."  JS at 6-7.  Based upon

1   this rationale, the Agency claims the ALJ was justified in rejecting the VA's

2   determination on the basis that the ALJ "had evidence the VA did not, which undermined

3   the evidence the VA did have." Valentine v. Commissioner Social Sec. Admin., 574 F.3d

4   685, 695 (9th Cir. 2009).

5          The Agency's attempt to defend the ALJ's reasons for rejecting the VA

6   determination is not convincing.  The logic upon which the Agency relies is only sound if

7   the purportedly new evidence is based upon *additional* information to which the VA was

8   not privy.  In contrast, here the evidence upon which the ALJ purports to rely – "the

9   opinions of the consultative examiners and the State Agency medical consultants," AR

10  19, was based upon *less* information than that which was before the VA.  Specifically, as

11  Plaintiff states (and the Agency does not appear to dispute), "The VA physicians had the

12  entire VA treatment record in front of them, had examined and treated plaintiff, and were

13  familiar with her condition." JS at 8.  In contrast, the "SSA physicians . . . did not have

14  access to the bulk of the VA evidence . . . ." Id.  Thus, the ALJ's reliance on less-

15  informed consultants is not persuasive.

16         Moreover, the VA determination was largely based on opinions from treating

17  sources, including evidence and information gathered from Dr. Krasnova.  AR 787.  Dr.

18  Krasnova, a staff psychiatrist at the VA, had treated Plaintiff since April 29, 2009 for

19  PTSD with chronic severe anxiety, nightmares, flashbacks, an inability to leave her home

20  by herself, feelings of isolation, and hopelessness.  AR 658.  Opinions from treating

21  sources, such as Dr. Krasnova, should be given substantial weight because they are more

22  able to provide a "longitudinal picture of [a claimant's] medical impairment(s) . . . that

23  cannot be obtained from . . . reports of individual examinations, such as consultative

24  examinations."  20 C.F.R. s. 404.1527(c)(2); see also Edlund v. Massanari, 253 F.3d

25  1152, 1157 (9th Cir. 2001) (noting that treating physicians "have a greater opportunity to

26  know and observe the patient").  "In evaluating whether [a] claimant satisfies the

27  disability criteria, the Commissioner must evaluate the claimant's ability to work on a

28  *sustained* basis." Lester v. Chater, 81 F.3d 821, 833 (9th Cir. 1995) (emphasis in

1  original; citations and internal quotation marks omitted).  "Occasional symptom-free

2  periods -- and even the sporadic ability to work -- are not inconsistent with disability."

3  Id. (citations omitted).  "That a person who suffers from severe panic attacks, anxiety,

4  and depression makes some improvement does not mean that the person's impairments no

5  longer seriously affect her ability to function in a workplace."  Ryan v. Comm. of Soc.

6  Sec., 528 F.3d 1194, 1201 (9th Cir. 2008) (citation and internal quotation marks omitted).

7   Here, the VA determination was based upon a "longitudinal picture" of the Plaintiff's

8  condition and treatment history; in contrast, the State Agency medical consultants

9  provide a more limited "snapshot" of the Plaintiff.  The importance of valuing a more

10  "longitudinal picture" is especially heightened when the plaintiff's condition involves

11  mental health issues, such as Plaintiff's PTSD, which can often not be accurately

12  accounted for in a single visit encounter.

13     Thus, under these circumstances, the ALJ's rejection of the VA determination is

14  not based on "persuasive, specific, valid reasons . . . supported by the record." McCartey,

15  298 F.3d at 1076

16     Accordingly the case is remanded so that the ALJ may properly address Plaintiff's

17  VA rating.  On remand, "the ALJ is not compelled to adopt the conclusions of the VA's

18  decisions wholesale, but if [he] deviates from final VA decisions, [he] may do so based

19  only on contrary evidence that is 'persuasive, specific, valid" and supported by the

20  record." Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012) (citing McCartey, 298 F.3d

21  at 1076).

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28

**VI.**

**CONCLUSION**

For the reasons stated above, the decision of the Social Security Commissioner is REVERSED and the matter is REMANDED for further proceedings consistent with this opinion.

DATED:  October 10, 2014

_____
HON. KENLY KIYA KATO
United States Magistrate Judge

9